## CHARLESTON.

MARTHA KATHERINE HODGES v. ANNIS BOGGS.

### Ex Parte CARL FRANZ BOGGS

Submitted February 21, 1922.    Decided February 28, 1922.

1. DIVORCE—*Decree Awarding Child's Custody Should be Modified When Changed Conditions Require it for the Child's Welfare.*

   A decree entered in a divorce suit awarding the custody of a child of the marriage to the mother should be modified, so far as such custody is concerned, when it is shown that the condition of the parties and the circumstances surrounding them have so changed since the entry of the decree that the child's welfare requires that the father shall have his custody. (p. 407).

2. SAME—*Held that Decree Should be Modified Changing Child's Custody, from the Mother to Father.*

   Where, upon an application to modify a decree awarding the custody of a child to its mother, it appears that during the time the mother had the custody and control of the child he was more or less neglected, and finally entirely abandoned by the mother and taken under the care and protection of the father more than three years before the making of such application, where proper care and attention have been given to his moral and intellectual training and development, and it satisfactorily appears that he will continue to receive such care and attention if permitted to remain with the father, and it is doubtful whether such will be the case if he is given to the custody of his mother, the court should so modify the former decree awarding the custody to the mother as to give the custody and care of the child to the father, upon the ground that his welfare demands such action.    (p. 408).

Error to Circuit Court, Kanawha County.

Petition, after grant of a divorce, by Martha Katherine Hodges against Annis Boggs for the custody of the parties' infant son, and petition in habeas corpus by said Hodges to procure possession of such son, Carl Franz Boggs, which resulted favorably to Martha Katherine Hodges, and the defendant, Annis Boggs, brings error. Heard with a petition in this court by said Carl Franz Boggs, by next friend,

for a writ of habeas corpus to inquire as to his further custody.

*Reversed; Custody of child awarded to defendant.*

W. W. *Wertz* and M. F. *Matheny,* for plaintiff in error.
*Barnhart, Horan & Pettigrew,* for defendant in error.

Ritz, Judge:

The only question involved in these proceedings is who is the proper person to have the custody of Carl Franz Boggs, the infant son of the parties to the cause first above named, and the relator in the second, for which reason both causes are considered together.

It appears that sometime prior to the 25th of November, 1908, Katherine Boggs and Annis Boggs were married, and that on that day, in a suit brought by the wife against the husband, an absolute divorce was granted. At that time there were two living children of the marriage. In the decree of divorce no mention is made of the older of the children, but the custody of the younger child, who was then less than a year old, was given to the mother by the court's decree. It appears that there was no defense made to that suit in any particular. After the granting of the decree of divorce above referred to the respective parties again married, and are now living with their respective spouses, the defendant Annis Boggs in the city of Charleston, and the plaintiff, who is now Martha Katherine Hodges in the State of Ohio. For some time after the divorce was granted the plaintiff made her living by working in the city of Charleston, and kept her infant son, whose custody is now involved here, with her mother who also resided in said city. Upon her marriage she removed with the child to the home of her husband in Detroit, Michigan, and subsequently resided at points in Ohio and Indiana. The marriage of the plaintiff to her present husband Hodges was in the year 1914, and the child who was then quite young lived with his mother and stepfather until a little more than three years before the institution of these proceedings. It appears that at

that time the mother sent the child to her mother in the city of Charleston to be cared for. He was then less than ten years of age, but reached Charleston in safety, and staid at the home occupied by his grandmother for a short time. It appears that at this time the grandmother was addicted to the use of habit-forming drugs to such an extent that very shortly after the boy's return she was committed to an institution for the treatment of such habits, and the child was left with practically no one to take care of him. The father, who lived in the city of Charleston with his wife, and with his other son, the older brother of the boy involved here, was informed of the condition of this boy, and the circumstances under which he was living. He found him upon the streets of the city uncared for and in a dirty filthy condition, took him home, and has had him there ever since. That was three years before the institution of any proceedings by the mother for his recovery. During that time the father and stepmother took good care of the boy, and sent him to school where he made some progress, notwithstanding he was two years behind the classes he should have been in at the time the father took charge of him, because of his irregular attendance at school prior thereto, or his failure to attend at all. In the fall of 1921, after the boy had passed the age of thirteen years, the mother came to the city of Charleston and demanded that the custody of the boy be given to her. This request was declined by the father. The mother then filed a petition averring that the custody of the child had been given to her in the divorce suit; that the decree therein had never been changed; and that the father improperly and unlawfully detained the child from her, upon which petition a writ of habeas corpus was issued. She also filed an information in the nature of a petition in the divorce suit setting up the material facts in regard to the custody of the child, and praying that a rule for contempt be issued against the father for his violation of the decree in the divorce case. This rule was issued. The father filed a return to the writ of habeas corpus showing the facts as above indicated, and also filed a return to the rule for contempt, which return was also made a petition in that cause, praying

that the decree granting the custody of the child to the mother be modified, and that his custody be given to his father. Upon the filing of these pleadings the circuit court entered an order combining the hearing on the writ of habeas corpus and the hearing on the rule for contempt and the petition for modification of the divorce decree, and directing that the proof be taken in support of the respective contentions of the parties by depositions, and when taken that the same be read on the joint hearing of all the matters then pending. Each of the parties took testimony by way of depositions, and filed the same as directed by the court's order. When the matter came on for hearing the circuit court entered an order adjudging the mother to be the proper custodian of the child, and directing that he be forthwith turned over to her. A request that this order be suspended to permit the defendant to seek a review of the same by this Court by appellate process was refused by the circuit court, and the child directed to be delivered immediately into the custody of the mother, but she was required to give bond in the penalty of $2500.00, in case she departed without the jurisdiction of the court, conditioned to return the child into the jurisdiction of the court should the order awarding her custody be reversed on appeal. Upon the entry of this order the boy filed a petition by his next friend in this Court asking for a writ of habeas corpus, in which he alleged that his mother was taking him away from his father against his consent, and prayed that a writ of habeas corpus be issued by this court, and that her right to take him without the State of West Virginia, and out of his father's custody might be inquired into. Upon this petition a writ was issued by this Court and executed upon the mother before she left the jurisdiction, and the boy is still held in custody of this writ. Subsequently an application was made to this Court by the father for a review of the action of the circuit court in awarding the custody of the child to the mother, and the questions arising in that case, as well as those arising in the habeas corpus proceedings originally brought in this Court, are now submitted to us for decision.

The plaintiff insists that in considering the order of the circuit court we cannot read the depositions taken and considered by the court below, for the reason that they are not made part of the record by any proper bill of exceptions. It is true, no formal bill of exceptions was taken making these depositions a part of the record, but was there any necessity therefor? The proceedings pending in the circuit court consisted of a motion to modify the decree entered in the divorce suit awarding the custody of the child to the mother, as well as the suit in habeas corpus by the mother against the father to recover the custody of the child and, as before stated, by an order of the court the proceedings were consolidated and ordered to be heard as one. After they were so consolidated the depositions were taken and the questions arising submitted to the court for its determination. Of course, the application to modify the decree in the divorce suit was a proceeding in chancery, and the depositions having been taken and duly filed became a part of the record in that case without any formal bill of exceptions, and the order of the court consolidating the two matters and ordering them to be heard together necessarily made these depositions a part of the record in the consolidated case. Further than this, the order of the court shows that he heard the case upon the depositions thus taken and filed, and even though the depositions were not properly part of the record in the chancery cause, still this reference to them in the order of the court, and their proper filing upon the hearing, would likely be sufficient to make them a part of the record in the proceeding at law. However this may be, they were certainly properly part of the record upon the proceeding to modify the decree entered in the divorce case.

It remains for us to determine whether the action of the circuit court in refusing to modify the decree awarding the custody of the child to the mother, and entering an order reaffirming her right to his custody, is justified by the proof. Of course, the law controlling the rights of the parties so far as the custody of their children is concerned is very well established in this jurisdiction. The controlling

influence is the welfare of the child.  It may be said that the
proper rearing of children makes necessary the guiding
influence of both parents, but when a situation arises which
makes it impossible for this condition to exist, the court, in
determining which of the  parents  shall  have  the  care,
custody, control and education of the child, must be guided
and influenced largely by the suitability of the parties from
the standpoint of moral, financial and physical fitness to
make of the child a useful member of society, and give the
custody to that one who will best meet the requirements of
the child.

The evidence in this case shows that while the mother had
the custody of this child prior to her second marriage, he
was cared for at the home of his grandmother.  Considerable
evidence is introduced to show that little, if any, superin-
tendence was given him after he grew to an age when he
should have been attending school regularly, but that he
was allowed to attend school when he pleased, and to spend
his time upon the streets of the city when to do so was more
in consonance with his desires.  The boy testifies that when
he was taken by his mother to her home in Ohio and Indiana
after her remarriage, he was sent to school irregularly, and
was compelled to sell papers in the mornings and evenings,
the earnings from which were taken from him by his step-
father and used by him.  The most significant thing, how-
ever, is that more than three years before any proceedings
were brought by the mother to recover possession of the
child she sent him back to Charleston unattended, he being
then about ten years of age, and placed him with her mother,
who was at that time, as is clearly shown by the evidence,
entirely unfit to have his care and custody.  It appears that
after so sending him back she paid no further attention to
him for more than three years.  When he first came to his
grandmother's house, as shown by his step-grandfather, he
was given little if any attention by anyone.  He was fur-
nished some clothes by his step-grandfather, but was allowed
to run at large and do as he pleased, with the result that
when his father shortly after discovered him he was in a
condition of filth and rags, as well as in a state of more or

less moral depravity. The mother accounts for her failure to pay any attention to the boy during these three years upon the theory that she was sick and in the hospital during part of the time. It may be, if her statements are entitled to full credit in this regard, that she is not subject to any adverse criticism on account of her neglect of the child, but so far as his interests are concerned the effect was just as bad as though it had resulted from the most wanton negligence and disregard of her duty, and we must bear in mind that it is the child's interest with which we are most concerned. During the three years that the father has had the child it is clearly shown that he has been well cared for, has been weaned from the vicious habits he had theretofore acquired, regularly attends school, and has kept up with the classes in which he was placed, although he is somewhat behind where a boy of his age would ordinarily be because of neglect of his educational interests or requirements prior to the time his father took charge of him. He is now with his elder brother, and it sufficiently appears that the stepmother is very fond of the two children, and is not only anxious that her husband contribute in a material way to their upbringing, but is likewise willing and anxious to contribute her personal efforts to that end. The mother, on the other hand, insists that she is also now well able to take care of the child; that she and her husband own a home of considerable value, but when confronted with the fact that the clerk of the court of the county in which she stated their home was located had certified that they owned no property in that county she declined, upon advice of her counsel, to answer any questions upon cross-examination in regard to the location of the property, or in whose name the title was held. Their lack of frankness does not make a strong appeal to the Court. The past conduct of the parties satisfied us of two things: first, that the boy's future, if allowed to remain with his father, is reasonably secure, as assured as the future of most children whose parents are in moderate circumstances; and second, if we judge the future by the past, and this is the only criterion by which we can judge it, to turn the boy over to his mother at this

time would make his future education and development a matter of serious doubt.   There is some attempt made to show that the father of the boy is morally unfit to have the custody of the child, but a careful perusal of the evidence shows that this was an utter failure.   At this time, and for many years past, it clearly appears that the father is a man in at least moderate circumstances, who has a high regard for his moral, social and financial obligations, and that his wife, the boy's stepmother, is likewise well fitted, both temperamentally and physically, for the proper rearing of this child.

Upon the whole case we are of the opinion that the lower court erred in refusing to modify the decree granting the custody of the child to the mother, and we will enter a decree here modifying that decree so as to give the custody, care and control of this child to the father until further ordered, and so far as the habeas corpus case brought in the circuit court is concerned that will be dismissed.   The writ of habeas corpus sued out in this Court upon the relation of the boy himself will be likewise dismissed without prejudice inasmuch as the decision of the case brought here by appellate process leaves no practical question to be determined therein.

*Reversed; Custody of child awarded to defendant.*